2006 ND 110

**Bank Center First, Bismarck, North Dakota, Plaintiff**

v.

**R.C. TRANSPORT, LLC, Mandan, ND; and Charlene Spotts, Individually as Personal Guarantor, and Collection Center, Inc., Jeff Swanson d/b/a Black Diamond Transport, State of North Dakota, F–M Forklift, Great West Casualty Co., Frontier Electric, Inc., Pioneer Construction Inc., Job Service North Dakota, Fronteer Personnel Service Inc., Federal Express Revenue Recovery, Brown & Brown of North Dakota Inc., State of ND by Workers Compensation Bureau, Metro Collision Center, Inc., First State Bank of Wilton, Robin Moos, United Accounts, Inc., Burleigh County Tax Equalization, Credit Collections Bureau, Mack & Associates, Inc., Jeff Swanson d/b/a Black Diamond Transport, any and all persons unknown, claiming any estate, lien or encumbrance upon the real estate described in the complaint, Defendants**

**Brad Gebeke, as assignee to the State of North Dakota by Worker's Compensation Bureau k/n/a Workforce Safety and Insurance, Defendant and Appellant**

v.

**David Wisdom and Steve Thilmony, as assignees of Brown & Brown of North Dakota Inc., Appellees.**

No. 20050299.

Supreme Court of North Dakota.

May 17, 2006.

Rehearing Denied July 7, 2006.

John M. Olson, Bismarck, N.D., for appellees.

Marnell Ringsak (argued) and Kent M. Morrow (on brief), Severin, Ringsak & Morrow, Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Brad Gebeke, as assignee of the State of North Dakota by Workforce Safety and Insurance, appealed from three district court orders stemming from his attempt to redeem foreclosed property. We conclude the court correctly ruled that David Wisdom and Steve Thilmony's redemptions were valid and that Gebeke's last attempt to redeem the property was untimely. We further conclude the court erred in ruling Gebeke was not entitled to be reimbursed for the maintenance costs he paid for the property as a redemptioner. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2] In December 2000, R.C. Transport, LLC, and Charlene Spotts executed a promissory note to Bank Center First for $173,200 secured by a mortgage on real property located in Mandan. R.C. Transport defaulted on its payments and Bank Center First obtained a foreclosure judgment on August 28, 2003. Gebeke, who claimed to have a vendor's lien against the property, waived his right to answer and consented to the bank proceeding with the foreclosure. The bank assigned its interest in the foreclosure judgment to Gebeke and he received a sheriff's certificate to the property after purchasing it for $178,284.05 at the sheriff's sale on November 4, 2003. On October 22, 2004, before the one-year redemption period expired, Gebeke sent the Morton County sheriff's office a letter declaring "the amount a proper redeemer would have to pay by certified check according to my calculations is $215,827.28 (principal, interest, taxes and insurance pursuant to NDCC § 28–24–02)."

[¶ 3] On November 4, 2004, the last day of the redemption period, Wisdom and Thilmony, as assignees of Brown and Brown, Inc., which had a judgment against R.C. Transport and Spotts in Burleigh County, redeemed the property for $190,505.99. On November 15, 2004, Gebeke filed a motion to vacate the redemption, arguing Wisdom and Thilmony's redemption was untimely and they had failed to pay the correct amount to redeem. Gebeke claimed they owed $215,827.83, a figure which included taxes, utilities and other bills paid by Gebeke to protect the premises during the one-year redemption period. The motion was accompanied by Gebeke's affidavit which, for the first time, detailed the bills he had paid and included copies of the bills and checks. On January 14, 2005, the court denied Gebeke's motion to vacate Wisdom and Thilmony's redemption because "the letter from Mr. Ringsak given to the Sheriff prior to the redemption concerning redemption costs did not include adequate itemization and verification of expenses incurred by Brad Gebeke and it is not clear at this time exactly what expenses Gebeke incurred for the period of redemption." The court, however, granted Gebeke, as a senior redemptioner, an extension of 15 days from the date of the order to redeem the property.

[¶ 4] On January 26, 2005, Gebeke, as assignee of F–M Forklift, which had a

Burleigh County judgment against R.C. Transport and Spotts, redeemed the property. On January 28, 2005, Gebeke redeemed the property as an assignee of Collection Center, Inc., which also had a Burleigh County judgment against R.C. Transport and Spotts. In February 2005, Gebeke filed and served the Morton County Sheriff with an affidavit claiming a vendor's lien against the property in addition to the amounts he claimed for taxes, utilities, and insurance, and asserted the amount required from a judgment creditor who attempted to redeem the property as of February 1, 2005, was $341,466.70, plus interest at $108.52 per day. The affidavit included copies of bills and checks relating to maintenance of the property. On March 18, 2005, Wisdom and Thilmony redeemed the property as assignees of Brown and Brown, Inc., by paying $196,124.15. On April 5, 2005, Gebeke filed a motion to vacate the March 18 redemption, again claiming Wisdom and Thilmony had paid an incorrect amount. On April 28, 2005, the court denied the motion, concluding that "Gebeke was a redemptioner and that Wisdom and Thilmony paid the correct amount in making their redemption on March 18."

[¶ 5] On May 6, 2005, Gebeke again redeemed as assignee of Pioneer Construction, Inc., and Great Western Casualty Company, both of which had judgments against R.C. Transport and Spotts. Gebeke filed an affidavit of maintenance costs with the Morton County Recorder on May 9, 2005, and served the Morton County Sheriff with notice of the costs on May 10, 2005. On May 20, 2005, Wisdom and Thilmony redeemed as assignees of a Burleigh County judgment in favor of First State Bank of Wilton without paying the maintenance costs. This was the first judgment involved in this litigation that had been docketed in Morton County. In June 2005, Gebeke moved to vacate Wisdom and

Thilmony's May 20 redemption, claiming they "failed to pay interest, superior judgments and additional maintenance costs" he had incurred. On July 20, 2005, the court summarily denied Gebeke's motion.

[¶ 6] On July 29, 2005, Gebeke, as assignee of the State of North Dakota by Workforce Safety and Insurance, which had an August 2002 judgment against R.C. Transport and Spotts, attempted to redeem the property. This judgment was docketed in Morton County. On August 4, 2005, Wisdom and Thilmony moved to vacate Gebeke's July 29 redemption, arguing Gebeke failed to comply with the redemption time requirements under N.D.C.C. ch. 28–24. Gebeke responded with a cross-motion requesting the court to vacate Wisdom and Thilmony's redemptions of May 20, 2005, and November 4, 2004. Gebeke argued the certificate of redemption for the May 20 redemption was not timely filed with the Morton County Recorder, and the November 4 redemption was invalid because the Brown and Brown, Inc., judgment had not been docketed in Morton County. On August 26, 2005, the court granted Wisdom and Thilmony's motion to vacate Gebeke's redemption because it "was not made in a timely fashion." The court ordered the Morton County Sheriff to issue a sheriff's deed to the property to Wisdom and Thilmony.

[¶ 7] Gebeke appealed to this Court, and we ordered that the case be temporarily remanded to the district court for the limited purpose of ruling on Gebeke's cross-motion. On September 23, 2005, the court summarily denied Gebeke's cross-motion. Gebeke appealed from the July 20, 2005; August 26, 2005; and September 23, 2005, orders of the court.

## II

[¶ 8] Gebeke argues the district court erred in denying his cross-motion to vacate

Wisdom and Thilmony's redemptions in November 2004 and March 2005 based upon the Burleigh County Brown and Brown, Inc., judgment because it had not been docketed in Morton County and did not constitute a valid lien on the Mandan property.

[¶ 9] Gebeke relies on N.D.C.C. § 28–20–13, which provides in relevant part:

> On filing a judgment roll upon a judgment that directs the payment of money, the clerk of the district court in which the judgment was rendered shall docket the judgment in a separate record to be known as the "judgment docket". The judgment may be docketed in any other county upon filing with the clerk of the district court of that county a transcript of the original judgment docket. The judgment is a lien on all the real property, except the homestead, of every person against whom the judgment is rendered, which the person may have in any county in which the judgment is docketed at the time of docketing or which the person thereafter acquires in the county, for ten years from the time of docketing the judgment in the county in which it was rendered.

[¶ 10] Under N.D.C.C. § 28–20–13, the filing of a money judgment in a county where the judgment debtor has an interest in real property is a lien on the judgment debtor's interest in the real property. *See Erway v. Deck*, 1999 ND 7, ¶ 7, 588 N.W.2d 862. Wisdom and Thilmony concede that a judgment must be docketed in the county where the real property is located to constitute a valid and enforceable lien against the real property, but argue equitable principles require that the redemptions should nevertheless be treated as valid because the parties proceeded with the numerous redemptions in this case without challenging any of them for failing to be docketed in Morton County.

[¶ 11] In *Ackerman v. First–Trust Joint Stock Land Bank*, 228 Iowa 275, 291 N.W. 150, 151 (Iowa 1940), the appellants argued that the defendant's judgment did not constitute a valid lien against their property because it covered their homestead, and therefore, the defendant was not entitled to redeem from the sheriff's sale and acquired no right, title, or interest in the property through the redemption. The Iowa Supreme Court rejected the appellants' argument:

> Assuming the truth of appellants' contention that defendant did not have a right to redeem, we hold that he is entitled to a sheriff's deed to the land as an equitable assignee. Defendant clearly thought he had a right to redeem from the sale and attempted to make a statutory redemption. The bank accepted the money that the defendant paid into the clerk's office and surrendered the certificate to the clerk, assigning it to the defendant. As between the bank and defendant, the redemption was accomplished.

*Id.* at 152. See also *D.S.B. Johnston Land Co. v. Mitchell*, 29 N.D. 510, 525–26, 151 N.W. 23, 27 (1915) (a purchaser at a void foreclosure sale is deemed an equitable assignee of the mortgage attempted to be foreclosed, and where he takes possession of the premises with the mortgagor's consent, the only remedy of the mortgagor or his assignee is an action in equity to redeem, and unless this remedy is timely invoked, the purchaser in possession acquires full legal title); *Nash v. Northwest Land Co.*, 15 N.D. 566, 108 N.W. 792 (1906) (same).

[¶ 12] Gebeke argues Wisdom and Thilmony's November 2004 and March 2005 redemptions should have been vacated because they failed to properly docket their judgments in Morton County and obtain judgment liens. This argument ig-

nores that Gebeke attempted to redeem on January 26th, January 28th and May 6, 2005 with judgments not docketed in Morton County. Of the seven redemptions made by the parties, only two were made on judgments that had been docketed in Morton County. The record shows the parties treated all redemptions as not being invalid for failure to docket the judgments in Morton County. Gebeke did not raise the issue in any of the earlier proceedings in this case, and raised the issue only after Wisdom and Thilmony redeemed on May 20, 2005, with the first judgment that had been docketed in Morton County.

[¶ 13] Though chapter 28–24, N.D.C.C., requires a redemptioner to have a judgment lien in order to redeem, Gebeke cannot now rely on this factor to invalidate Wisdom and Thilmony's redemptions. Gebeke acquiesced to, and in fact initiated, this improper redemption procedure. His acquiescence precludes him from now objecting. *Bormann v. Beckman,* 73 N.D. 720, 730, 19 N.W.2d 455, 460 (1945); N.D.C.C. § 31–11–05(7). We conclude that Wisdom and Thilmony's redemption in November 2004 and March 2005 from judgments which had not been docketed in Morton County did not, as between the parties, invalidate those redemptions or any of the redemptions that followed.

### III

[¶ 14] Gebeke argues the district court erred in ruling his July 29, 2005, redemption was untimely.

[¶ 15] Successive redemptions are governed by N.D.C.C. § 28–24–04, which provides:

> If property is redeemed by a redemptioner, another redemptioner, even after the expiration of one year from the day of sale, may redeem from the last redemption if the redemption is made within sixty days after such last redemption. This sixty-day limitation does not apply to any redemption made within one year after the sale by whomsoever or from whomsoever such redemption is made, but all persons entitled to redeem in all cases have the entire period of one year from the day of sale in which to redeem. The property, as often as a redemptioner is so disposed, may be redeemed again from any previous redemptioner within sixty days after the last redemption.

Under the statute, a redemptioner is given 60 days since the last preceding redemption, or one year from the date of sale, whichever is longer, when redeeming from another redemptioner. *See State ex rel. Brooks v. O'Conner,* 6 N.D. 285, 288, 69 N.W. 692, 693 (1896). The right of redemption from a mortgage foreclosure sale is statutory and can be exercised only within the period of time and in the manner prescribed by law. *Stevahn v. Meidinger,* 79 N.D. 323, 348, 57 N.W.2d 1, 17 (1952) (on petition for rehearing).

[¶ 16] Gebeke argues his July 29, 2005, redemption was timely because Wisdom and Thilmony's previous redemption did not occur until June 8, 2005, when they were issued a sheriff's certificate of redemption. Wisdom and Thilmony argue their redemption occurred on May 20, 2005, when they filed the redemption papers with the county recorder and the sheriff.

[¶ 17] Redemptions by redemptioners are governed by N.D.C.C. § 28–24–03, which requires a written notice of redemption:

> A redemptioner making redemption shall give a written notice of redemption to the sheriff and shall record a duplicate in the office of the recorder of the county where the land is situated. The

redemptioner shall state in the notice of redemption an amount that the redemptioner will credit on the claim against the debtor on making redemption. If the amount stated in the notice is less than the amount of the lien under which the redemptioner makes redemption, a later redemptioner may redeem from the earlier redemptioner by paying the amount paid by that redemptioner, together with the amount of any taxes, assessments, utilities, or other items paid by that redemptioner in protection of the title or premises, and interest at the same rate as provided in the original instrument on which the judgment is based, together with the amount stated by the first redemptioner in the notice. The amount stated by a redemptioner in the notice must be treated as a payment of that amount on the indebtedness, and the redemptioner shall immediately endorse that on the evidence of the claim. If the claim is a judgment, the redemptioner shall cause a statement of that amount to be entered by the clerk of court in the judgment docket. That credit is deemed conditional only and must be canceled on proof of a further redemption by the debtor or by a redemptioner having a prior right, without payment of the amount credited.

[¶ 18] The paperwork required to be produced by a redemptioner is set forth by N.D.C.C. § 28–24–05, which provides:

A redemptioner shall produce to the officer or person from whom the redemptioner seeks to redeem and shall serve with the redemptioner's notice to the sheriff:

1. A copy of the docket of the judgment under which the redemptioner claims the right to redeem, certified by the clerk of the district court of the county where the judgment is docketed, or, if the redemptioner re-

deems upon a mortgage or other lien, a note of the record thereof certified by the recorder;

2. A copy of the assignment necessary to establish the redemptioner's claim, verified by the affidavit of the redemptioner or of a subscribing witness thereto; and

3. An affidavit by the redemptioner or the redemptioner's agent showing the amount then actually due on the lien.

[¶ 19] Gebeke has cited no authority for his assertion that the 60–day limit under N.D.C.C. § 28–24–04 begins to run only after the sheriff issues a certificate of redemption. Indeed, although there is reference in our prior caselaw to issuance of a certificate of redemption by a sheriff, there is no statutory reference in N.D.C.C. ch. 28–24 to execution of a certificate of redemption by a sheriff upon a redemption by a redemptioner. Moreover, this Court has indicated the 60–day limit begins to run when the written notice of redemption is filed with the office of the county recorder. In *Bank of Steele v. Lang,* 399 N.W.2d 293, 297 (N.D.1987), this Court quoted with approval from *Fox v. Nelson,* 30 N.D. 589, 594–95, 153 N.W. 395, 397 (1915), and its analysis of the predecessor statute to N.D.C.C. § 28–24–03:

" 'The notice to be filed by a redemptioner,' says the Supreme Court of South Dakota, in construing a similar statute, 'is for the benefit of the person filing it, as *its filing is the beginning of the brief period of limitations,* of which he may take advantage, as against other redemptioners. But under this statute the redemption and the filing of the notice of redemption are distinct acts. As against the person from whom the redemption is made, no notice is necessary. The notice is only operative and necessary as against other redemption-

ers, and their right to redeem can be barred only by filing the notice of redemption, as required by the statute. The failure to file the notice of redemption does not render the redemption itself irregular or illegal. It merely leaves the rights of other redemptioners unaffected. It does not extend the limitations of 60 days, because *that period begins only when the notice is filed.*'" *Spackman v. Gross,* 25 S.D. 244, 126 N.W. 389.

(Emphasis added).

[¶ 20] The record reflects that Wisdom and Thilmony filed the notice of redemption with the county recorder on May 20, 2005. This filing commenced the 60–day period for others to redeem. The date the sheriff issued a certificate of redemption did not extend the 60–day period. Because Gebeke's subsequent redemption on July 29, 2005, was more than 60 days after May 20, 2005, we conclude the district court correctly ruled Gebeke's redemption was untimely.

IV

[¶ 21] Gebeke argues the district court erred in failing to require Wisdom and Thilmony to reimburse him for the taxes, assessments, utilities, and insurance premiums he paid for maintenance of the property.

[¶ 22] The "redemption statutes are remedial in nature and are intended not only for the benefit of creditors holding liens subsequent to the lien being foreclosed, but are also for the purpose of making the property of the debtor pay as many of his debts as it can be made to pay and to prevent its sacrifice." *Mehlhoff v. Pioneer State Bank,* 124 N.W.2d 401, 407 (N.D.1963) (on petition for rehearing). Redemptions are encouraged, *id.,* and in order to redeem, the redemptioner "need pay only the purchase price with interest, plus amounts which have been paid to protect the premises." *Lang v. Bank of Steele,* 415 N.W.2d 787, 791 (N.D.1987); *see also* N.D.C.C. § 28–24–02 ("redemptioner may redeem the property from the purchaser by paying the purchaser the amount of the purchase with interest at the rate provided in the original instrument on which the judgment is based, plus the amount of any insurance premiums, assessments, taxes, utilities, or other items paid by the purchaser in protection of the title or the premises, which the purchaser may have paid after the purchase, and interest at the same rate on that amount"); N.D.C.C. § 28–24–03 ("a later redemptioner may redeem from the earlier redemptioner by paying the amount paid by that redemptioner, together with the amount of any taxes, assessments, utilities, or other items paid by that redemptioner in protection of the title or premises").

[¶ 23] The procedure for claiming amounts paid for protection of the premises is detailed in N.D.C.C. §§ 28–24–07, 28–24–08, and 28–24–10, which provide:

28–24–07. Protection of premises during period of redemption. In all cases where a sale of real estate is made under execution or upon mortgage foreclosure, the purchaser at the sale or the purchaser's successors in interest, in case of the expiration during the period of redemption of any insurance policy on the premises sold, may pay the premium necessary to procure a renewal of that policy, and, if any taxes or assessments become delinquent, or if any installment of interest or principal on any prior or superior mortgage becomes due during that period of redemption, and any utilities or other items to be paid by the purchaser in protection of the title or premises, the purchaser may pay those charges. The amount so paid, with interest at the same rate as provided in

the original instrument on which the judgment is based, is part of the sum necessary to be paid for the redemption from the sale. The payments may be proved by a written notice verified by affidavit of the purchaser, the purchaser's agent or attorney, stating the items and describing the premises. That notice may be recorded in the office of the recorder and a copy of the notice served on the sheriff of the county. After that service the sheriff, before permitting a redemption, shall collect the full amount specified in the notice in addition to the amount which would otherwise be due in redemption from the sale, and shall pay over that amount to the purchaser at the sale, or the purchaser's assignee.

28–24–08. Protection of debtor. In case any mortgagor, redemptioner, or judgment debtor objects to the payment of any insurance premium, taxes, or prior liens on account of the incorrectness or invalidity thereof, he may file with the sheriff an indemnity bond, in an amount and with sureties to be approved by the judge of the district court, and thereupon the sheriff shall permit redemption to be made without the payment of such insurance premiums, taxes, or prior liens so excepted to, and the purchaser may determine the correctness or validity thereof and may collect the same by an action directly upon such bond, which action must be brought within one year next following such redemption.

28–24–10. Notice of additional lien. If any taxes, assessments, insurance premiums, utility charges, or other items are paid by the purchaser or by a redemptioner, or if the purchaser or redemptioner has or acquires any lien other than that on which the sale or redemption was made, written notice of that item must be given to the sheriff and if that notice is not given to the sheriff, the property may be redeemed without paying that tax, assessment, lien, utility, or other item.

Under the predecessors to these statutes, this Court has held that "where a prior redemptioner or purchaser has paid taxes since the foreclosure of the mortgage, such redemptioner, in case of an attempted redemption from him, is entitled to the payment, not merely of the principal debt, but of the taxes also, and the issuance of a certificate by the sheriff without such payment and without the knowledge of and ratification by the said prior redemptioner will not be binding upon him." *Heitsch v. Minneapolis Threshing Mach. Co.*, 29 N.D. 94, 150 N.W. 457 Syll. 2 (1914).

 [¶ 24] Gebeke argues these statutes entitled him to be reimbursed at this time for all of the taxes and other expenses he paid as the original purchaser and as a subsequent redemptioner. However, the statutory scheme does not support his claim regarding expenses paid as the original purchaser at the sheriff's sale. First, Gebeke's October 22, 2004, letter to the Morton County sheriff's office did not comply with the written notice requirements of N.D.C.C. § 28–24–07, as the district court ruled in its unappealed January 14, 2005, order. Second, N.D.C.C. § 28–24–10 specifically provides that written notice of those expenses "must be given to the sheriff and if that notice is not given to the sheriff, the property may be redeemed without paying that tax, assessment, lien, utility, or other item." Obviously, a legally sufficient written notice must be given to the sheriff in a timely manner before the redemption period expires and a redemption occurs, because the property may be redeemed without paying those expenses if no written notice is given. *See generally Heitsch*, 29 N.D. at 109–10, 150 N.W. at 458–59. We conclude Gebeke's legally insufficient written notice of expenses to the

sheriff before Wisdom and Thilmony redeemed the property on November 4, 2004, allowed them to redeem the property without paying those expenses incurred by Gebeke prior to November 4, 2004.

[¶ 25] Gebeke argues that Wisdom and Thilmony are not entitled to a sheriff's deed to the property because they did not comply with N.D.C.C. § 28–24–08 by filing an indemnity bond with the sheriff when they disagreed with and refused to pay maintenance costs outlined in his February and May 2005 affidavits filed and served upon the sheriff. Words used in a statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, N.D.C.C. § 1–02–02, and when the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. N.D.C.C. § 1–02–05. Section 28–24–08, N.D.C.C. allows "any mortgagor, redemptioner, or judgment debtor" to object to payment of "any insurance premium, taxes, or prior liens" and to file an indemnity bond with the sheriff in order to redeem without paying those charges. If a mortgagor, redemptioner, or judgment debtor files the bond without paying the additional charges, the "purchaser" may bring an action to determine the validity of the charges. For purposes of N.D.C.C. ch. 28–24, the terms "purchaser" ·and "redemptioner" are not synonymous. See N.D.C.C. § 28–24–01(2) (defining "redemptioners" as "[a] creditor having a lien by judgment, mortgage, or otherwise on the property sold, or on some share or part thereof, subsequent to that on which the property was sold"); N.D.C.C. § 28–24–02 ("judgment debtor or redemptioner may redeem the property from the purchaser"); N.D.C.C. § 28–24–09 (payments upon redemption may be made "to the purchaser or redemptioner"); N.D.C.C. § 28–24–10 (if charges are paid

"by the purchaser or by a redemptioner"); N.D.C.C. § 28–24–13 ("purchaser" or "redemptioner" entitled to sheriff's deed). The term "purchaser" refers to the purchaser at a sheriff's sale following foreclosure, and N.D.C.C. § 28–24–08 applies only to the first redemption made to the purchaser at the sale. *See generally Whitbeck v. McClenahan*, 40 S.D. 246, 167 N.W. 144 (1918) (similar statute applied to redemptioner redeeming from purchaser at foreclosure sale impaired obligation of contract).

[¶ 26] Gebeke was the purchaser in this case, and after Wisdom and Thilmony redeemed in November 2004, Gebeke did not retain his status as a purchaser, but became a redemptioner through his assignments from judgment creditors. *See* N.D.C.C. § 28–24–01(2) *and* 28–24–04. The indemnity bond requirement does not apply in the case of successive redemptions by redemptioners. Although Wisdom and Thilmony did not file an indemnity bond with the sheriff when redeeming the property in November 2004, we have concluded Gebeke's October 22, 2004, notice of expenses was legally insufficient, and therefore, the failure to file the indemnity bond at that time is inconsequential. We conclude Wisdom and Thilmony were not required to file an indemnity bond with the sheriff in connection with their March 18, 2005, and May 20, 2005, redemptions.

[¶ 27] The district court, however, denied without explanation Gebeke's request for expenses he incurred protecting the property as a redemptioner after Wisdom and Thilmony's initial redemption on November 4, 2004. The record shows Gebeke, on February 2, 2005, served the Morton County Sheriff with an affidavit listing expenses he had incurred for the property through February 1, 2005, and on May 9 and 10, 2005, filed an affidavit of maintenance costs through May 5, 2005,

with the Morton County Recorder and served the sheriff with notice of those costs. Although the affidavit summaries of the various costs included amounts dating back to November 4, 2003, through November 4, 2004, which Gebeke was no longer entitled to receive, the copies of bills and checks accompanying the affidavits permits an assessment of allowable costs Gebeke incurred for protection of the premises while he was a redemptioner. The court summarily denied his request for reimbursement without any explanation. We conclude that, under N.D.C.C. §§ 28–24–03 and 28–24–10, Gebeke is entitled to reimbursement of allowable costs he incurred in protecting the property as a redemptioner after November 4, 2004.

V

[¶ 28] We have considered the other issues raised by the parties and deem them to be without merit or unnecessary to address in view of our disposition of this case. We affirm the August 26, 2005, and September 23, 2005, orders of the court. We reverse the July 20, 2005, order of the court and remand for a determination of the amount of reimbursement to which Gebeke is entitled as a redemptioner for expenses to protect the property. Wisdom and Thilmony are not entitled to a sheriff's deed to the property until that determination is made.

[¶ 29] DONOVAN FOUGHTY, D.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

[¶ 30] The Honorable DONOVAN FOUGHTY, D.J., sitting in place of SANDSTROM, J., disqualified.